We're going to go on to case number 4, number 183200, United States v. Malagon. Good morning. Someone leaves their papers up there. Oh, well. These are my papers. Okay. Now, I know they're yours, but. Good morning, Your Honors. The other isn't. I think there's one additional piece of paper here. Okay. Good morning, Your Honors. Good morning. I'm Ali Irain, Jenner & Block, counsel on behalf of defendant appellate Mr. Jesus Malagon. May it please the court. Mr. Malagon's conviction should be reversed because the trial court admitted improper and unfairly prejudicial drug code testimony from both an expert and a lay witness. The improper admission of this evidence deprived Mr. Malagon of a fair trial because it converted potentially ambiguous and innocuous statements into admissions of drug trafficking. This appeal identifies two errors made at trial. First, the district court erred by allowing an expert to opine on the meaning of drug code without requiring the expert to explain his methodology and how his experience in prior law enforcement led to the conclusions that he reached in violation of Federal Rule of Evidence 702. Under Rule 702, experts who offer opinions based on their experience are required to explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. Do you object to any expert testimony as to drug code words, or do you agree that it's proper in drug cases but object only the use of it is to the conversation here? Yes, Your Honor. So drug code testimony is used in many drug cases, and this court has previously held that it is the proper subject of expert testimony. What we're objecting to here is the expert's explanation of his methodology. It's really the fourth prong of the Daubert standard, the fourth prong of Rule 702, which requires an expert to explain how his principles have been reliably applied to the facts of the case. There was no objection to Officer Reynolds' testimony, though, so we're here on plain error review. This is not the kind of error that affects substantial rights or calls into question the integrity of the proceeding. Yes, Your Honor, that's correct. There was no objection at trial, and we are here on plain error. However, the expert testimony was highly prejudicial to Mr. Maligon's case, and the government's case would have been significantly less persuasive without it. First, this evidence was key to the government's case. Transcripts of audio and video recordings played a central role in the case, and there was no mention of drugs or cocaine in any of those transcripts. Thus, the drug code testimony was necessary to transform the potentially innocuous statements into admissions of drug trafficking. And it was so important to the government's case that the government… There's no question that the deal was about drugs, right? The evidence is of physical cocaine, right? Well, I think that's the question, is when… But there is physical evidence, right? Indisputable physical evidence? Ultimately, cocaine was recovered, but the issue… Right, and that makes the code language far less important because the deal was self-evidently about a large quantity of cocaine. Yes, so… And the jury had that in front of it. I mean, I'm sure the brick was not sitting at the council table, but it's not disputed. Yes, Your Honor, it's not disputed that cocaine was ultimately recovered. However, what is in dispute is whether Mr. Maligon was talking about drugs when he was interacting with the special agent, the undercover agent. During the course of the transaction. No, not during the course of the transaction. It was when he was sitting in a backyard. But it's the same course of conduct. Yes, and Mr. Maligon testified on his behalf that he was not involved in that drug transaction. Most of the evidence at trial really was circumstantial. The only direct evidence was Agent Amador, who testified that he participated in a drug sale with Mr. Maligon. Mr. Maligon, however, testified that he was not a part of that drug sale. And so credibility was a key issue at trial, and the expert's testimony corroborated and reinforced the testimony of Agent Amador, making it much more likely that the jury would believe Agent Amador and disbelieve Mr. Maligon. This case is very similar to the Fourth Circuit case, United States v. Johnson. In Johnson, the government presented testimony of a DEA agent to interpret certain words in phone calls as drug code. And when the government asked the agent how the agent knew that cocaine was the subject of the conversation, the agent replied, just based on other calls. That's very similar to the type of testimony that the expert gave in this case. On appeal, the Fourth Circuit expressed doubt that the agent's testimony would have been admitted as expert testimony under Rule 702, noting that although the agent repeatedly indicated that he had expertise, he provided virtually no methodology or guiding principles that would enable him to decode the wiretapped phone calls in this case. Was that plenary review or plain error review? It was not plain error review in that case. In this context, we would submit that it's even more important to be vigilant and require that the expert articulate his methodology because, as the Third Circuit has recognized in United States v. Wheeler, there's a danger that an expert brought in to interpret drug code might give a drug-related meaning to every phase simply because it has appeared in a drug trial. I'd like to move to the second error, which has to do with lay opinion evidence. The second error committed by the district court was its improper admission of lay opinion testimony that certain of Maligon's statements were drug code in violation of Federal Rule of Evidence 701. With respect to Amador's testimony, why wouldn't a person be able to testify as to the content of a conversation that she was a party to? If no recording of the conversation existed, would you argue that Amador couldn't testify as to his own understanding as to what they talked about? Yes, Your Honor. Agent Amador actually conceded on cross-examination that he was relying at least in part on his experience as an agent in many drug and narcotics investigations. The fact that the agent participated in the conversation and interacted with and was part of the investigation doesn't necessarily decide the issue. That's actually this court's decision in United States v. York. In that case, the agent was a part of the conversation. He was a part of the investigation. However, in interpreting the drug code in that case, he relied more on his experience than on the interactions with the defendant in that case. In this court's decision in U.S. v. Gaitan, the court recognized that if it's unclear what body of knowledge the agent is drawing from, personal knowledge or experience, then a precautionary instruction may be appropriate in those circumstances. I see that I'm running out of time, so I'd like to reserve it for rebuttal. Of course. Thank you. Thank you so much. May it please the Court, my name is Charles Mullaney. I represent the United States as an appellee. There's no dispute here that Agent Reynolds was qualified as an expert based on his 18 years of law enforcement experience and over 100 previous narcotics investigations. And in fact, Agent Reynolds did explain that experience in his testimony before he offered his interpretation of the transcripts. He explained how drug dealers use code words to conceal their activity, conceal what they're talking about, and he included common terms from his experience, like tickets to refer to money, parts or pieces to refer to drug quantities, and using just a number when referring to a quantity without referencing the noun. So he explained like one would be one kilogram of cocaine, for example. And then he applied that experience in interpreting the transcripts, and it was clear that it was based on his training and experience that he had testified about earlier in his testimony. You know, I mean clearly there's a potential danger when an expert testifies that everyday words actually refer to drugs and drug transactions because that alone can turn an innocuous conversation into a criminal one in the eyes of a jury. Mr. Mulaney, is cross-examination the only protection against an expert overreaching, or are there other protections against interpreting every conversation as referencing drugs where no drug dealers are involved? Well, in addition to cross-examination, which occurred in this case, there's the jury instruction on expert testimony, which was given in this case. In the Johnson case relied on by the appellant, there was no jury instruction about expert testimony. And the court's concern, as you indicated, was that common everyday terms were being used, like hit me, I'll hit you, what's happening? And they explained this is not typical drug code, yet the agent testified that in his opinion it was. Here we had Agent Reynolds testify that based on his experience, some of the terms being used here are typical drug code, like parts and pieces, which show up in the transcripts. He explained tickets can mean money from his previous experience, and it did so here. So the concern about everyday language becoming drug code just by reading into it is not present here because Agent Reynolds did tie it to his previous experience. And then he looked throughout the transcripts to interpret those key terms and others. He testified about a portion of those transcripts. There was 37 pages approximately of transcripts published to the jury, and he interpreted portions of that based on multiple transcripts and words being used consistently across transcripts, like parts, pieces to refer to cocaine, and he made connections between that and his experience. For example, where Ramirez-Sanchez says, I already opened the part, and it's the one I tell you, Agent Reynolds explained, yeah, not only part is a common drug term, but he says he's opened it, and that's something that we, meaning DE agents, typically hear as far as kilogram quantities, which come in packaging, so it's to open the packaging to verify the quality of the narcotics. And then, again, Ramirez-Sanchez wants to confirm that everything's ready, that the CS and his buyer have all the tickets. Again, that means money, commonly referred to as money, the payment to narcotics, and Agent Reynolds testified that based on his experience, often drug dealers are very cautious dealing with another party for the first time, and he explained in interpreting this that you often hear, are you ready frequently in drug transactions to confirm that the other party is ready to go through with the deal, and he explained that in interpreting that portion. There are further examples in the transcript of Ramirez-Sanchez confirming that it's the part that's already ready for the car. That was transcript 3C, right before the defendant showed up at Ramirez-Sanchez's house that day, and then we have the defendant's own words in the video transcripts that were interpreted about the same code word. Do you have the cars ready, or next time I'll have the cars ready. And then in the garage, in video transcript 1F, Agent Reynolds recognized it where he says the two of them are guaranteed. Two of them refers to the quantity of drugs here, like his experience referring to kilograms, and guaranteed means if there are any issues with the quality that you can let Mr. Maligon know. And at trial, the defendant denied that he said these words at all. His defense in his testimony on this particular point was that he wasn't the one saying that, and in closing argument, his defense attorney argued that there wasn't sufficient evidence showing that the defendant was the speaker in these recordings that are the subject of the appeal. And as the court indicated, there was overwhelming evidence in this case. Ramirez-Sanchez in the garage showing the first undercover officer a half kilogram of cocaine, referring to his buddy, Ramirez-Sanchez having phone calls with the defendant according to call records, the defendant showing up five days later, Officer Amador's in-person meeting with him where he keeps reassuring him about the cocaine arriving, and the surveillance of the defendant leaving and driving around suspiciously and taking out a cooler, and then you have the defendant presenting the kilograms in person to Officer Amador in the meeting where he says they're guaranteed, and you have photographs of the kilos and the cooler on the defendant's phone. So if there are no other questions, I'd say for all these reasons, the court should affirm the judgment and conviction below. I'm happy to answer questions as well on Officer Amador's testimony, but as the court pointed out, he testified as to conversations where he was there, and he made reference to what he was trying to convey to the defendant and gestures being made by the defendant towards Ramirez-Sanchez. It is the quintessential type of opinion testimony based on his understanding from being there at the meeting. Thank you, Your Honors. I ask that you affirm the judgment and conviction below. Thank you. Mr. Ring. Just a few points in rebuttal. Judge Robner, you asked my opponent if there is a concern here about everyday drug code becoming – everyday language becoming drug code, and that danger is present in this case. Agent Reynolds never connected his prior experience to the facts of this case. In fact, he never once himself mentioned his experience or training when explaining the basis for his conclusion that Mr. Maligon used drug code. The government is trying to piece together an after-the-fact methodology based on bits and pieces of the transcript, but that's not sufficient. The jury is entitled to hear an on-the-record explanation when directly asked for the basis for his conclusions and on-the-record explanation for his methodology. I would encourage the court to take a close look at the transcript in this case and Agent Reynolds' testimony on the drug code. It's Short Appendix 120 to 124. Agent Reynolds, he never pointed to his experience. He never pointed to context clues. He never mentioned patterns. And the testimony that he did give is just simply not enough to meet the standard. Just to return quickly to the issue of prejudice, what real difference, even assuming there is inadequate foundation for these opinions? The prejudice here, it really comes down to credibility. It was a credibility determination between Agent Amador and Maligon. Well, actually, he's at the scene of the deal. So it's hard to say that a skirmish about foundation for expert or lay opinion testimony made any difference at all here, had it been litigated. Yes, Your Honor. So this is a case where really at base it was Agent Amador's testimony against the defendant's testimony. And there was a key credibility determination for the jury to make. Agent Reynolds' testimony buttressed and corroborated Agent Amador's testimony, making it more likely that the jury would believe his testimony. And if there are no other questions, I will rely on my briefs. Thank you to both parties. Mr. O'Rean, you were asked and appointed by the court to take this appeal. And you have the sincere thanks of the court for doing so and for doing such a good job for your client. Thank you so much. It's a privilege. So thank you. Thanks so much. And thank you, government. You did a good job, too.